UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

```
GIL DESJARDIN and,            )
ETHEL DESJARDIN,              )
                              )
     Plaintiffs,              )
                              )     No. 2:08-cv-264
     v.                       )
                              )
BOMBARDIER RECREATIONAL       )
PRODUCTS, INC.,               )
                              )
     Defendant.               )
```

**Memorandum and Order**

Plaintiffs Gil and Ethel Desjardin (the "Desjardins") brought this motor vehicle products liability action against Bombardier Recreational Products, Inc. ("BRP") in the Superior Court for Orange County, Vermont. BRP removed the case to federal court and moved to dismiss the complaint on grounds of forum non conveniens. BRP's motion to dismiss is **denied**.

**Facts Alleged in the Complaint**[1]

On April 15, 1999, the Desjardins ordered a Ski-Doo snowmobile through Progressive Motorsports, Inc., of Hudson Falls, New York. At all times relevant to this complaint, the Desjardins were residents of Vermont. BRP, a Canadian corporation headquartered in Valcourt, Quebec, designed and manufactured the snowmobile. Mr. Desjardin took delivery of the snowmobile on December 29, 1999.

---

[1] When reviewing a motion to dismiss at the pleading stage, a court accepts as true the factual allegations set forth in the plaintiff's complaint. *Gross v. British Broad. Corp.*, 386 F.3d 224, 226 (2d Cir. 2004).

On February 4, 2006, Mr. Desjardin and three of his friends were snowmobiling in Restigouche, Quebec. Around 4:00 p.m., Mr. Desjardin and his friends stopped at a convenience store to re-fuel. A vehicle was parked twenty to twenty-five feet behind the snowmobile at a right angle to the pump. As Mr. Desjardin finished refueling, a truck pulled in front of his snowmobile. Mr. Desjardin reversed his snowmobile, then dismounted and moved the snowmobile slightly to the right by hand. Then Mr. Desjardin re-mounted his snowmobile and proceeded to move the snowmobile in reverse, but when he applied pressure to the throttle lever, the snowmobile unexpectedly and rapidly moved in reverse and collided with the parked vehicle. As a result Mr. Desjardin was pinned against the vehicle as the snowmobile came to rest on top of him.

Mr. Desjardin's snowmobile was equipped with a mechanical-reverse, which allowed the snowmobile to accelerate rearward up to thirty mph in roughly two seconds. Mr. Desjardin alleges that the mechanical-reverse feature constituted an unreasonably dangerous design flaw and that BRP did not adequately warn him of the potential for "explosive rearward acceleration."

The Desjardins' complaint alleges four counts: (1) strict liability (design defect), (2) strict liability (failure to warn), (3) negligent manufacture and design, and (4) loss of consortium.

## Discussion

"The doctrine of forum non conveniens allows a district court to refuse to entertain jurisdiction of a case 'even when jurisdiction is authorized by the letter of a general venue statute.'" *Gross v. British Broad. Corp.*, 386 F.3d 224, 229 (2d Cir. 2004) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)). Jurisdiction may be declined "when doing so would 'best serve the convenience of the parties and the ends of justice.'" *Id.* (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947)).

To evaluate a forum non conveniens motion a district court must conduct a three-step analysis. *Gross*, 386 F.3d at 230 (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65 (2d Cir. 2001) (en banc)). The first step is to "determine the degree of deference to which the plaintiff's choice of forum is entitled." *Id.* (citing *Iragorri*, 274 F.3d at 73). "Once that determination is made, [a] court must conduct the analysis set out in [*Gilbert*] . . . to determine whether an adequate alternative forum exists." *Id.* If one does exist, a court must then "balance the private and public interests to decide whether the case should be adjudicated in the plaintiff's choice of forum or in the alternative forum proposed by the defendant." *Id.* (citing *Gilbert*, 330 U.S. at 507-09).

### I. Choice of Forum

"When the home forum has been chosen, it is reasonable to assume that this choice is convenient." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981); *accord Gross*, 386 F.3d at 230 (citing *Iragorri*, 274 F.3d at 70-71). A "plaintiff's choice of forum is generally entitled to great deference when the plaintiff has sued in the plaintiff's home forum." *Iragorri*, 274 F.3d at 71 (citing *Koster*, 330 U.S. at 524). In certain situations, to be sure, the plaintiff's choice of forum may not control. *See id.* at 72 (listing several factors that courts may consider). Here, where there is no indication that the Desjardins' choice of forum was dictated by forum shopping reasons, and every indication that this choice was motivated by convenience, their choice of forum is entitled to substantial deference. *Gross*, 386 F.3d at 230; *accord Piper Aircraft*, 454 U.S. at 255-56; *Koster*, 330 U.S. at 524.

## II. BRP's Alternative Forum

The "application of forum non conveniens doctrine 'presupposes at least two forums in which the defendant is amenable to process.'" *Gross*, 386 F.3d at 231 (quoting *Gilbert*, 330 U.S. at 506-07). Typically, a defendant's proposed alternative forum is acceptable "if the defendant is amenable to process in the alternate forum." *Id*. (citing *Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 609 (2d Cir. 1998)). A defendant's consent to submit to the jurisdiction

of the foreign forum generally satisfies this requirement.  *See Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003).

The parties do not dispute that BRP is amenable to process in the province of Quebec, Canada.  Thus, Quebec is an adequate alternative forum.

### III.  The Public and Private Factors

Having determined the level of deference to afford the Desjardins' choice of forum and the availability of an alternative forum, this Court must weigh the "public and private interests to determine if the ends of justice would be served by dismissing the case from plaintiff's chosen forum."  *Gross*, 386 F.3d at 232.  This step is "the most substantial part of the analysis."  *Id*.  Here, the weight of the public interests favors neither forum while the weight of the private interests favors the Desjardins' choice of forum.

### A.  *Public Interest Factors*

When weighed together, the public interest factors do not favor either forum.  The public interest factors include

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."

5

*Id.* at 233 (quoting *Piper Aircraft*, 454 U.S. at 241 n. 6).

### 1. Administrative Difficulties

Neither party suggests that this forum will experience congestion. However, BRP argues that language barriers may present difficulties to this forum. There is good reason to believe that courts in bilingual Quebec are well suited to adjudicate disputes proceeding in both English and French. As a border state with Quebec, however, Vermont and its courts are quite familiar with documents written in and witnesses speaking French. This factor only slightly favors the alternative forum.

### 2. Local Interest

Although the catalyst for this suit was an accident which occurred in the province of Quebec, this is a products liability action alleging that BRP defectively manufactured and designed a snowmobile which was sold, registered, and insured in the United States to a resident of Vermont. While both Vermont and Quebec have an interest in the outcome of this litigation, on balance, Vermont appears to have a slightly greater interest in the outcome. *See Miller v. White*, 702 A.2d 392, 396 (Vt. 1997) (explaining that Vermont "has a strong interest in applying its law to [a] case" because "[t]he domicile of the plaintiff has a significant interest in assuring proper compensation to the victim because the social and economic repercussions of personal injury will occur in plaintiff's domicile.")(quotations omitted).

### 3. Governing Law

A federal district court sitting in diversity applies the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Vermont law, the "choice of law in a tort action that implicates states or countries beyond Vermont will be determined by which state or country has the most significant relationship to the occurrence and to the parties." *Amiot v. Ames*, 693 A.2d 675, 677 (Vt. 1997) (citing Restatement (Second) of Conflicts of Laws § 145(1)). Typically, in a personal injury action, the "most significant relationship will usually be where the injury occurred." *Id*. at 678. However, "[a] more significant relationship often exists where the place of injury has little relationship to the parties or the place where the causative conduct occurred." *Id*.

The parties dispute whether Quebec or Vermont law will apply to this products liability action. It is not necessary to resolve this issue in order to weigh this factor, however. State and federal courts in Vermont are as accustomed to ascertaining and applying Canadian law in the appropriate case, *see, e.g., Kehoe ex rel. Matson v. Anctil*, 7 F. Supp. 2d 423, 424 (D. Vt. 1998); *Miller*, 702 A.2d at 393, as the courts of Quebec are to United States law.

### 4. Unfairness to Prospective Jurors

Having determined each forum has a connection to the case, citizens of neither forum will be unfairly burdened with jury duty.

B. *Private Interest Factors*

The private interest factors favor the Desjardins' choice of forum. The private interest factors include

> the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."

*Gross*, 386 F.3d at 232 (quoting *Gilbert*, 330 U.S. at 508).

1. The Evidence and Witnesses

In weighing the ease of access to evidence, courts are concerned with the evidence relevant to the "precise issues that are likely to be actually tried." *Iragorri*, 274 F.3d at 74. BRP agrees that the bulk of evidence related to the issues "will be BRP's internal design, testing and manufacturing documents, as well as the testimony of the individuals involved in those processes." (Doc. 8 at 19.) These documents are within BRP's control and may be produced during discovery. Even if some of the individuals involved in those processes are no longer employed by BRP, or are unwilling to testify in Vermont, they may still be deposed.

BRP argues that all of the records surrounding the accident, such as police reports and medical records, are located in Canada and written in French, but this evidence does not appear to be particularly relevant to the issues in this case. BRP also argues that the witnesses to the accident are unavailable or unwilling to testify in Vermont. Assuming those witnesses have relevant information to offer in this products liability suit, they may be deposed where they reside. *See Gross*, 386 F.3d at 232. Additionally, not every witness to the accident is a resident of Canada or is unwilling to testify.

### 2. Viewing the Scene

A jury view is not likely in this products liability suit, but if a view were appropriate, neither forum is more convenient than the other. The accident scene is approximately five hundred miles from either forum.

### 3. Other Considerations

There are two other concerns that favor the Desjardins' choice of forum. First, Mr. Desjardin, 73, was severely injured in the accident and has not fully recovered his health and mobility. Second, the Desjardins have limited financial resources. These additional circumstances favor adjudication in the Desjardins' choice of forum. *See Gross*, 386 F.3d at 233.

**Conclusion**

Given the high level of deference to the Desjardins' choice of forum, the neutral weight of the public interest factors and the favorable weight of the private interest factors to the Desjardins' choice of forum, their choice of forum will not be disturbed. Accordingly, BRP's motion to dismiss for forum non conveniens is **denied.**

Dated at Burlington, Vermont this 28th day of April, 2009.

/s/ William K. Session III
William K. Sessions III
Chief Judge, U.S. District Court